UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LATANYA SPOORS,

               Plaintiff,

                                   Case No. 1:23-cv-501

v.

                                   Honorable Ray Kent

KENT COUNTY CORRECTIONAL
FACILITY et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 8.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.30.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kent County Correctional Facility, Schafer, Vital Core Health Strategies, Hildes, Padilla, Placencia, and Unknown Parties ##1–3. The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims against Defendant LaJoye-Young and Plaintiff's ADA claim against Defendant LaJoye-Young in her individual capacity. Plaintiff's ADA claim against Defendant LaJoye-Young in her official capacity remains in this case. Further, the Court will deny Plaintiff's request for the appointment of counsel.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

## I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Women's Huron Valley Correctional Facility (WHV) in Ypsilanti, Washtenaw County, Michigan. The events about which she complains, however, occurred at the Kent County Correctional Facility in Grand Rapids, Kent County, Michigan. Plaintiff sues the Kent County Correctional Facility, Deputy Corrections Officer Unknown Schafer, Corrections Medical Services Vital Core Health Strategies, Kent County Sheriff Michelle LaJoye-Young, Deputy Corrections Officer Unknown Hildes, Deputy Corrections Transport Officer Sylvia Padilla, Corrections Officer Unknown Placencia, Unknown Party #1 named as "Deputy DeAnna Unknown Corrections Officer," Unknown Party #2 named as "Deputy Nicole Unknown Corrections Officer," and Unknown Party #3 named as "Nurse Practitioner Aaliyah Unknown." (ECF No. 1, PageID.1.) Plaintiff states that she is suing Defendants in their individual and official capacities. Plaintiff indicates that during the time period that is relevant to this lawsuit, she was a "convicted and sentenced state prisoner who was on a writ." (*Id.*, PageID.9.)

Plaintiff alleges that while she was confined at the Kent County Correctional Facility, she only received two of her medications and that her medical needs were not met. Plaintiff states that she has complained of dizziness, lightheadedness, and nausea, but was merely told to drink more water. Plaintiff also states that she fell off her bunk more than once at the Kent County Correctional Facility. Further, Plaintiff contends that she is hearing impaired and that she was not provided with a qualified interpreter, a telephone handset with amplifiers, or an assistive listening system.

4

Plaintiff also alleges that she was not taken to use to the TDD[2] phone on the days she was scheduled because "there was always an excuse." (*Id.*, PageID.10.)

Plaintiff claims that Defendant Kent County Correctional Facility failed to properly train female deputies to do a proper pat search, and that female deputies unnecessarily grope the breasts and private areas of female inmates in a manner which makes inmates feel violated. Plaintiff specifically alleges that Defendant Hildes failed to do a proper pat search when Plaintiff first entered the facility, groping Plaintiff's breast and private area. Plaintiff says that she was previously a victim of sexual assault and felt violated by the conduct of Defendant Hildes.

Plaintiff asserts that Defendant LaJoye-Young failed to properly train her subordinates on how to interact with an inmate who is hearing impaired. Plaintiff alleges that Defendants Padilla and Schafer made fun of Plaintiff for being hearing impaired. Plaintiff alleges that Defendant Schafer also refused to allow Plaintiff to speak to a sergeant without giving her a reason and told her that she had to use regular paper to file a grievance.

Plaintiff contends that Defendant Vital Care Healthcare Strategies failed to properly train and hire qualified nurses and nurse practitioners. Plaintiff states that she has numerous medical conditions, food allergies, medication allergies, degenerative disc and joint disease, neuropathy, osteoarthritis, seizures, and hearing loss. Plaintiff alleges that when she first arrived at the Kent County Correctional Facility, she was not given any of her medications or her walker, and that Defendant Placencia merely stated that Plaintiff would be "ok" when it was clear that Plaintiff needed a walker. Plaintiff also complains that she was not advised of the risks of COVID-19 at the facility, even though she was at high risk because of her underlying medical conditions.

---

[2] Telecommunications device for the deaf. *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1032 (E.D. Mich. 2005).

Plaintiff asserts claims under the Fourth, Sixth, Eighth, and Fourteenth Amendments, as well as under Title II of the ADA. Plaintiff seeks damages, as well as declaratory and injunctive relief.

## II.     Plaintiff's request for the appointment of counsel

Plaintiff has requested the appointment of counsel. (*See* ECF No. 7.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary at this time to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel therefore will be denied.

## III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Title II of the ADA

Plaintiff states that Defendants violated her rights under Title II of the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir.

2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that [s]he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that [s]he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons, county jails, and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir.

---

[1] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

2002). "Public entit[ies]," as the term is used here, includes county jails. *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 733 (S.D. Ohio 2022).

Plaintiff has named as Defendants the Kent County Correctional Facility and Sheriff LaJoye-Young, as well as several jail employees in their individual and official capacities. As for the individual capacity claims against Defendants, Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Instead, the proper defendant to a suit under the ADA is the public entity or an official acting in his or her official capacity. *Id.* Therefore, Plaintiff's ADA claims against Defendants in their individual capacities will be dismissed. Further, the Kent County Correctional Facility (i.e., the building itself) is not a proper defendant, and Plaintiff's ADA claims against the Kent County Correctional Facility will also be dismissed. Accordingly, the only Defendant for purposes of Plaintiff's ADA claim is Defendant LaJoye-Young in her official capacity. *See, e.g.*, *Smith v. Mendrick*, No. 19-cv-07319, 2021 WL 4318081, at *2 (N.D. Ill. Sept. 23, 2021) (concluding that the county sheriff was the "proper defendant against whom Plaintiff [could] assert his ADA . . . claims" because the sheriff "is the official overseeing operations at [the jail]" (citation omitted)).

"Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)). Here, Plaintiff alleges that she was subjected to being made fun of because of her hearing impairment and that she was not provided with a qualified interpreter, a telephone handset with amplifiers, or an assistive listening system. Plaintiff also claims that she was not allowed to use to the TDD phone on the days she was scheduled because "there was always some excuse."

To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he or she is disabled within the meaning of the ADA; (2) he or she is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he or she requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018). The Sixth Circuit has interpreted this portion of Title II "to require that covered entities provide 'meaningful access' to their services, programs, and activities." *Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*, 860 F. App'x 381, 386 (6th Cir. 2021), *cert. denied sub nom. Keller v. Chippewa Cnty. Bd. of Commissioners*, 142 S. Ct. 761 (2022) (quoting *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909 (6th Cir. 2004)).

As noted above, Plaintiff specifically alleges that she is hearing impaired and was denied a qualified interpreter, a telephone handset with amplifiers, an assistive listening system, and meaningful access to the TDD phone. The Court concludes that Plaintiff has alleged sufficient facts to state an ADA claim against Defendant LaJoye-Young in her official capacity.

**B.    Section 1983 Claims**

**1.    Defendant Kent County Correctional Facility**

Plaintiff names the Kent County Correctional Facility as a defendant in this case. Plaintiff's § 1983 claims against the Kent County Correctional Facility fails because a jail is not a legal entity capable of being sued. *Brady v. Ingham Cnty. Corr. Facility*, No. 1:08-CV-839, 2008 WL 4739082, at *2 (W.D. Mich. Oct. 28, 2008) (citing *Watson v. Gill,* 40 F. App'x 88, 89 (6th Cir. 2002) (holding that county jail is not a legal entity susceptible to suit); *Hughson v. County of Antrim,* 707 F. Supp. 304, 306 (W.D.Mich.1988) (concluding that county sheriff's department and county prosecutor's office are not legal entities capable of being sued); *Bernard v. Brinkman,*

10

No. 1:07-cv-459, 2007 WL 2302354, at *3 (W.D. Mich. Aug.8, 2007) (Kent County Correctional Facility, Kent County Sheriff's Department and Kent County Prosecutor's Office are not legal entities capable of being sued). Therefore, the Court will dismiss Plaintiff's § 1983 claims against Defendant Kent County Correctional Facility.

### 2.    Defendant LaJoye-Young

Plaintiff asserts that Defendant LaJoye-Young failed to properly train her subordinates on how to interact with an inmate who is hearing impaired. It is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." Shehee, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant LaJoye-Young encouraged or condoned the conduct her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts about the conduct of Defendant LaJoye-Young. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant LaJoye-Young was personally involved in the events described in Plaintiff's amended complaint. Such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff also names Defendant LaJoye-Young in her official capacity. In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff  "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in plaintiff's complaint to determine whether

plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because she has not identified a policy or custom. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiff has not asserted that there is an official policy.

Plaintiff also has not identified a custom. The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996), *abrogated on other grounds by Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998), *as stated in Phillips v. Anderson Cnty. Bd. of Educ.,* 2006 WL 3759893 (E.D. Tenn. Dec. 19, 2006); *see also Craig v. Lima City Sch. Bd. of Educ.,* 384 F.Supp.2d 1136 (N.D. Ohio 2005).

Plaintiff makes a conclusory assertion that Defendant LaJoye-Young must have failed to properly train her deputies because various jail employees failed to provide Plaintiff with unspecified medications, a walker, and other accommodations, and that they subjected Plaintiff to harassment because of her hearing impairment. Plaintiff also appears to be asserting a failure to train female deputies on how to do a proper pat search. However, Plaintiff fails to allege any facts showing that the behavior complained of was the result of a custom or policy.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy

or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Plaintiff's claims against Defendant LaJoye-Young.

### 3.    Defendant Vital Core Health Strategies

Plaintiff contends that Defendant Vital Care Healthcare Strategies failed to properly train and hire qualified nurses and nurse practitioners. A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates—as Vital Care does—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of*

14

*Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Vital Care, Vital Care's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's constitutional] rights." *Starcher*, 7 F. App'x at 465. Additionally, Vital Care's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

In this case, Plaintiff fails to allege any facts showing the existence of a custom or policy of failing to properly train its employees. Therefore, Plaintiff's claims against Vital Care are properly dismissed.

### 4.    Fourth Amendment

Plaintiff also states that she is bringing a claim under § 1983 for violation of her Fourth Amendment rights. (ECF No. 1, PageID.5.)

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to a stop or arrest of a "free person," before the probable cause determination. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). It does not apply to pretrial detainees or those who have already been criminally convicted. *Id*.

Furthermore, both the Supreme Court and the Sixth Circuit have recognized that prisoners and detainees may be subjected to strip searches and body-cavity searches without individualized suspicion. *See Florence v. Bd. Of Chosen Freeholders*, 566 U.S. 318, 333-34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) ("[S]uspicionless strip searches [are]

15

permissible as a matter of constitutional law . . . ."); *see also Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, strip searches "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure) (citing *Stroudemire*, 705 F.3d at 574). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stroudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Here, Plaintiff alleges that Defendant Hildes failed to do a proper pat search when Plaintiff first entered the facility, groping Plaintiff's breast and private area. To the extent that Plaintiff intended to allege that this pat-down search violated the Fourth Amendment, as explained below, Plaintiff has failed to state a claim.[3] Plaintiff's allegations suggest that the pat-down was conducted while Plaintiff was clothed, and a pat-down search is necessarily intrusive, even sexually intrusive. *See Terry v. Ohio*, 392 U.S. 1 (1968) (describing the nature of a pat-down search). Under these circumstances, Plaintiff has fails to allege sufficient facts to suggest that the pat-down search that was conducted upon her entry into the facility was unreasonable and violated the Fourth Amendment.

---

[3] To the extent that Plaintiff intended to bring an Eighth Amendment claim regarding this patdown, this claim is addressed below.

### 5.      Sixth Amendment

Plaintiff also references the Sixth Amendment in her complaint. However, Plaintiff fails to allege any facts to suggest that her right to counsel under the Sixth Amendment was implicated in any way by Defendants' actions. As such, Plaintiff fails to state a Sixth Amendment claim, and this claim will be dismissed. *See Iqbal*, 556 U.S. at 678–79 (holding that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983).

### 6.      Eighth Amendment

#### a.      Medical claims

Plaintiff alleges that while she was confined at the Kent County Correctional Facility, she only received two of her medications and that her medical needs have not been met. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that when she first arrived at the Kent County Correctional Facility, she was not given any of her medications or her walker, and that Defendant Placencia merely stated that Plaintiff would be "ok" when it was clear that Plaintiff needed a walker. Plaintiff also complains that she was not advised of the risks of COVID-19 at the facility, even though she was at high risk because of her underlying medical conditions. Plaintiff makes conclusory assertions that she complained of dizziness, lightheadedness, and nausea, but was merely told to drink more water, that she eventually received only two of her medications and that she fell off her bunk more than once.

The Court notes that Plaintiff's Eighth Amendment denial of medical care claims are entirely conclusory. Plaintiff fails to describe the medications she was being denied, the reasons they were necessary, or the dates of specific incidents and complaints. Nor does Plaintiff describe incidents such as falls, symptoms, or other complaints in any detail. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff also asserts that she was not provided with a qualified interpreter, a telephone handset with amplifiers, or an assistive listening system. However, Plaintiff fails to allege facts showing that the denial of these services posed a substantial risk of serious harm to Plaintiff. Therefore, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim for the denial of medical care.

### b.    Pat down searches

Plaintiff alleges that Defendant Hildes failed to do a proper pat search when she first entered the facility, groping Plaintiff's breast and private area. Not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action."  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A pat-down search is necessarily intrusive, even sexually intrusive. In *Terry*

*v. Ohio*, 392 U.S. 1 (1968), the Supreme Court noted the following was an "apt description" of such a search: "'(T)he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.'" *Id*. at 17 n.13.

Plaintiff provides no specific details about the alleged searches, but the Court of Appeals has on several occasions found no Eighth Amendment violation for pat-down searches and isolated incidents of sexual touching. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not state an Eighth Amendment claim); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

Although Plaintiff alleges that she felt violated by the conduct of Defendant Hildes she alleges no facts that would distinguish the facts in his case from those in the foregoing cases. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Hildes for an improper pat down search.

### 7.    Equal Protection

Plaintiff makes a conclusory assertion that Defendants violated herFourteenth Amendment equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that

a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff fails to allege facts showing that she was treated differently from other similarly situated inmates. Therefore, Plaintiff's equal protection claim is properly dismissed.

## Conclusion

The Court will deny Plaintiff's request for the appointment of counsel. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schafer, Vital Core Health Strategies, Kent County Correctional Facility, Hildes, Padilla, Placencia, and Unknown Parties ##1–3 will be dismissed for failure to state a claim, under

28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims against Defendant LaJoye-Young and Plaintiff's ADA claim against Defendant LaJoye-Young in her individual capacity. Plaintiff's ADA claim against Defendant LaJoye-Young remains in this case.

An order consistent with this opinion will be entered.


Dated:   July 14, 2023                            /s/ Ray Kent
                                                Ray Kent
                                                United States Magistrate Judge